IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

|  |  |  |
|---|---|---|
| DOUGLAS W. RUSH | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| VS. | * | NO: 1:07CV00001  SWW |
| | * | |
| | * | |
| BARBARA PERRYMAN, individually | * | |
| and in her official capacity, ET AL. | * | |
| | * | |
| Defendants | * | |
| | * | |
| | * | |

## ORDER

Plaintiff Douglas Rush ("Rush") brings this action under 42 U.S.C. § 1983 against Ozarka College, members of the Ozarka College Board of Trustees, and the Ozarka College Vice President of Finance. Rush sues the individual defendants in their individual and official capacities. In addition to claims for constitutional violations brought under § 1983, Rush pursues supplemental claims under state law. Before the Court is Defendants' motion to dismiss (docket entry #11)[1] and Rush's response in opposition (docket entry #14). After careful consideration, and for the reasons that follow, the motion to dismiss will be granted in part and denied in part. All claims will be dismissed, with the exception of Rush's free speech and due process claims for equitable relief under § 1983.

**I.**

---

[1] Defendants Bonnie Wyatt, Lawrence Billing, Gayle Cooper, and Ozarka College filed the motion to dismiss, and all other defendants (Defendants Bennie Cooper, George Thomas, Sharon Mathis, Paul Balentine, and Barbara Perryman) have adopted the motion as their own.

In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, all facts alleged in the complaint are assumed to be true. *Doe v. Northwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997). The complaint must be reviewed in the light most favorable to the plaintiff, *McMorrow v. Little*, 109 F.3d 432, 434 (8th Cir. 1997), and should not be dismissed unless it is clear beyond doubt that the plaintiff can prove no set of facts thereunder which would entitle him or her to relief. *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir. 1996).

The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). However, a motion to dismiss is not a device for testing the truth of what is asserted or for determining whether the plaintiff has any evidence to back up what is in the complaint. *ACLU Foundation v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. *Id. See also Hickman v. Tosco Corp.*, 840 F.2d 564, 565 (8th Cir. 1988); *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir. 1982). Thus, a motion to dismiss should be granted "as a practical matter . . . only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

**II.**

Rush served as the president of Ozarka College from 1993 until 2005. In 2003, the college undertook to build an on-campus fitness center, and the Ozarka College Institutional Committee ("the Committee") supervised the project. The Committee was required to make

purchases for the fitness center using a competitive sealed bidding process.  However, in 2004, a legislative audit revealed that 2 purchases for fitness equipment were not obtained by competitive bidding as required by Arkansas law.  The report stated, in part, that "reassignment of responsibilities . . . from the business office to a committee, contributed to the noncompliance."  Docket entry #1, ¶ 11.

On November 10, 2004, Rush responded to the audit report by letter, stating that the Committee was aware of the purchasing procedures required under state law and that it was the intent of Ozarka College to comply with state law.

On May 26, 2005, the Ozarka College Board of Trustees ("the Board") convened for its annual meeting.  At previous annual meetings, the Board's activities included completing Rush's annual performance evaluation and extending his employment contract for an additional year.  However, no such action was taken at the 2005 meeting.  Additionally, without announcing a reason, the  Board called a closed executive session during the annual meeting.

On June 9, 2005, Rush provided testimony to the Arkansas Legislative Joint Auditing Committee on Educational Institutions regarding the aforementioned purchases for fitness equipment noted in the legislative audit report.

On June 13, 2005, the Board reconvened to complete its agenda from the May 26, 2005 annual meeting.  The Board called an executive session and included Defendant Gayle Cooper, the college's vice president for finance, in the closed meeting.  Rush alleges that Cooper gave a written statement to the Board in which he reported false information.  Rush alleges: "[Cooper] erroneously stated that Mr. Rush had said the Committee was not going to follow state bidding procedures, that Cooper checked with Mr. Rush several  times about Cooper's concerns that the

equipment was not being purchased properly, and . . . that Mr. Rush had threatened that he would make Mr. Cooper look bad." Docket entry #1, ¶18.

On June 30, 2005, Defendant Perryman, a Board member, learned that Rush talked to reporters regarding the Board's "potentially illegal executive sessions." *Id*., ¶19.  Perryman informed another Board member that she was upset about Rush's communication with reporters. *Id*.

On July 7, 2005, the Board terminated Rush's employment contract on the stated grounds of dishonesty, insubordination, failure to comply with state laws, and willful disregard of board policy. *Id*., ¶20. On August 24, 2005, Rush requested that the college reinstate him and provide him a name-clearing hearing. Rush's requests were denied.

Rush filed this action pursuant to 42 U.S.C. § 1983, naming Ozarka College, Cooper, and the Board members as defendants. Rush sues Cooper and the Board members in their individual and official capacities, alleging that they (1) retaliated against him for speech activities protected under the First Amendment and (2) deprived him of procedural due process and equal protection guaranteed under the Fourteenth Amendment. Rush also brings supplemental state law claims for breach of contract, defamation, tortious interference with contract, violation of the Arkansas Whistle-Blower Act, and violation of the Arkansas Freedom of Information Act. By way of relief, Rush seeks "any and all compensatory and punitive damages as provided for by law under each and every count and cause of action" and reinstatement or front pay and full restoration of benefits in lieu of reinstatement.

**III.**

In support of their motion to dismiss, Defendants assert that Rush's claims against

Ozarka College and Defendants in their official capacities are barred by sovereign immunity, and Defendants are entitled to qualified immunity and state statutory immunity with respect to Rush's claims against the individual defendants in their individual capacities.

## Sovereign Immunity

The sovereign immunity of the States recognized in the Eleventh Amendment[2] bars any suit brought in federal court against a state or state agency, regardless of the nature of the relief sought, unless Congress has abrogated the States' immunity or a state has consented to suit or waived its immunity. *See Seminole Tribe v. Florida*, 517 U.S. 44, 74 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Edleman v. Jordan*, 415 U.S. 651, 663 (1974). In addition to barring all claims brought directly against a state or state agency, the Eleventh Amendment protects state officials sued in their official capacities from all claims, with the exception of certain claims for prospective, equitable relief. *See Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997).

In this case, the State has neither consented to suit nor waived its immunity with respect to Rush's claims.[3] Furthermore, Congress did not abrogate the States' sovereign immunity

---

[2]The States' immunity from suit existed long before ratification of the Constitution, and it neither derives from or is limited by the Eleventh Amendment. *See Alden v. Maine*, 119 S. Ct. 2240, 2254 (1999).

[3]Rush contends that Arkansas has waived immunity for claims pursuant to the Arkansas Whistle-Blower Act and the Arkansas Freedom of Information Act. Although those statutes provide for citizen suits in state court, a state's general waiver of sovereign immunity is insufficient to waive Eleventh Amendment immunity. A state must specify an intent to subject itself to federal court jurisdiction in order to waive Eleventh Amendment immunity. *See Faibisch v. University of Minnesota*, 304 F.3d 797, 800 (8th Cir. 2002).

Rush also argues that Defendants' actions were *ultra vires* because the Board held closed executive sessions. In *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89 (1984), the

when it enacted 42 U.S.C. § 1983.  *See Burk v. Beene*, 948 F.2d 489, 492-93 (8th Cir. 1991).  If Ozarka College is an "arm" of the State,[4] it is entitled to immunity from all claims, and Rush's official capacity claims for money damages must be dismissed.

In determining whether a particular agency is an "arm" of the state, a court must assess the agency's degree of autonomy and control over its own affairs and, more importantly, whether a money judgment against the agency will be paid with state funds.  *See  Thomas v. St. Louis Bd. of Police Com'rs*, 447 F.3d 1082, 1084 (8th Cir. 2006)(citing *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 430 (1997)).

In *Hadley v. North Arkansas Community Technical College,* 76 F.3d 1437 (8th Cir. 1996),  the Eighth Circuit found that North Arkansas Community Technical College ("NACTC") enjoys immunity under the Eleventh Amendment.  The Court noted that "Arkansas calls NACTC a state agency, allows for substantial local autonomy but provides ultimate state control, and–most importantly–funds the agency's general operations primarily from the state treasury." *Id*. at 1442.  Ozarka College was established and receives funds through the same state laws that govern NACTC, and the Court finds that Ozarka College is likewise entitled to sovereign immunity.  Accordingly, Rush is barred under the Eleventh Amendment  from pursuing claims

---

Supreme Court noted that the *ultra vires* doctrine is a "narrow and questionable exception" to the Eleventh Amendment, and a state officer acts  *ultra vires* only when he acts "without any authority whatever."  *Id*. at 102 n.11.   Here, even if the Board violated state law by holding a closed meeting, such a violation did not strip the Board of its delegated authority to terminate Rush's contract.  *See National Park Medical Center, Inc. v. Arkansas Dept. of Human Services*, 322 Ark. 595, 603 (1995).    The Court disagrees that the *ultra vires* doctrine applies in this case.

[4]Sovereign immunity extends to states and "arms" of the state, but not to local governments.  *See Alden v. Maine,* 527 U.S. 706, 756 (1999).

against Ozarka College, and his claims against Defendants in their official capacities, for money damages, must be dismissed.

The Eleventh Amendment bars damage relief against the States, but under the *Ex parte Young* doctrine, federal courts may enjoin state officials from committing ongoing violations of federal law.[5] *See Ex parte Young*, 209 U.S. 123, 159-60 (1908). Here, Rush claims that Defendants terminated his employment contract in violation of his First and Fourteenth Amendment rights, and he seeks injunctive relief in the form of reinstatement. Although Rush may pursue these claims to the extent that he seeks reinstatement, the Eleventh Amendment precludes his claim for front pay in lieu of reinstatement.[6]

## Qualified Immunity

The individual defendants assert that they are entitled to qualified immunity as to Rush's § 1983 claims against them in their individual capacities. For reasons stated below, the Court finds that Defendants are entitled to qualified immunity only with respect to Rush's equal protection claim.

Qualified immunity protects "government officials performing discretionary functions . .

---

[5] The *Ex parte Young* exception is limited to relief granted on the basis of federal law; federal courts are barred from instructing state officials how to conform their conduct to state law. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). Defendants in their official capacities are immune from Rush's state law claims, regardless of the relief sought.

[6] "When reinstatement is not possible, front pay is generally an appropriate alternative equitable remedy. For purposes of the Eleventh Amendment, however, front pay is not analogous to the prospective relief permitted under *Ex parte Young* because it 'must be paid from public funds in the state treasury.' The alternative front pay award is therefore barred by the eleventh amendment." *Campbell v. Arkansas Dept. of Correction,* 155 F.3d 950, 962 (8th Cir. 1998)(citations omitted).

. from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Two questions guide the determination of whether a defendant is entitled to qualified immunity. The first is whether the facts, viewed in a light most favorable to the plaintiff, show that the complained-of conduct violated a federal constitutional or statutory right. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001). If a constitutional right has not been violated, the defendant is entitled to qualified immunity, and the claim cannot proceed. *See id.* If, however, a constitutional right may have been violated, the court must inquire whether the right was clearly established. *Id.* Qualified immunity is an affirmative defense, to be upheld in a motion to dismiss only when the immunity can be established on the face of the complaint. *See Bradford v. Huckabee*, 330 F.3d 1038, 1041 (8th Cir. 2003)(citations omitted).

      First Amendment. To establish a claim of unlawful retaliation for protected speech, a public employee must prove that he spoke out, as a citizen, on a matter of public concern; the defendant took adverse employment action against him; and his protected speech was a substantial or material factor in the adverse employment action. *See Altonen v. City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007)(citation omitted).

      Rush alleges that the Board terminated his contract in retaliation for his testimony before the Arkansas Legislative Joint Auditing Committee and because he responded to inquiries from the press regarding "potentially illegal executive sessions." *See* docket entry #1, ¶¶ 19, 36. Rush also alleges that he "was believed to have associated with a political candidate[,] and Defendant Wyatt stated that she would retaliate for what she believed was his association." *Id.*,

¶ 36.

Rush alleges that he was required to provide testimony to the legislative committee. *See* docket entry #1, ¶ 16. If he testified before the committee pursuant to his official duties, he was not speaking as a citizen for First Amendment purposes. *See Garcetti v. Ceballos*, 126 S. Ct. 1951, 1958 (2006). Additionally, Rush's allegation that Defendant Wyatt threatened to retaliate against him for associating with a political candidate, standing alone, fails to establish a First Amendment violation.[7] However, the allegation that Rush informed the news media about potential violations of state open meetings law is sufficient to demonstrate that he spoke out, as a citizen, on a matter of public concern. *See Lindsey v. City of Orrick*, 2007 WL 1814943, *7 (8th Cir. June 26, 2007). Additionally, the Court finds that Rush has alleged sufficient facts to demonstrate that his speech was a substantial or material factor in the decision to terminate his contract.

The Court further finds that Rush's First Amendment right was clearly established--a reasonable official would have known that it was illegal to terminate Rush's contract in retaliation for his speech regarding potential violations of state law. Based on the current record, Defendants are not entitled to qualified immunity with respect to Rush's First Amendment claim.

<u>Fourteenth Amendment - Due Process</u>.  Rush claims that Defendants deprived him of his right to procedural due process by failing to provide him with a name-clearing hearing. The Fourteenth Amendment guarantees that no State shall deprive any person of life, liberty, or

---

[7] Supporting a political candidate for elected office falls within the scope of rights of political association. However, Rush does not allege that Defendant Wyatt threatened him for supporting a particular candidate.

property, without due process of law. The Eighth Circuit has held that an employee's liberty interests are implicated "where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." *Putnam v. Keller,* 332 F.3d 541, 546 (8th Cir. 2003). "A deprivation of a constitutional magnitude may occur if such an employee is not granted the opportunity to clear his or her name." *Coleman v. Reed*, 147 F.3d 751, 755 (8th Cir. 1998).

In order to establish a procedural due process claim for the loss of this protected liberty interest, Rush must show (1) he was stigmatized by the allegations which resulted in his discharge; (2) Defendants made the allegations public; and (3) he denied the allegations. *See id.* Rush alleges that Defendants terminated his employment at a public meeting on the stated grounds of dishonesty, insubordination, failure to comply with state laws, and willful disregard of board policy. He further alleges that he denied the grounds for his dismissal and that the Board denied his request for a name-clearing hearing.[8]

The Court finds that Rush has alleged a viable due process violation. Furthermore, the Court finds that Rush's procedural due process right to a name-clearing hearing was clearly established.

<u>Fourteenth Amendment - Equal Protection</u>. The Equal Protection Clause requires that the government treat similarly situated people alike. "Absent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th

---

[8]Defendants state that an exhibit attached to the complaint proves that Rush received a hearing. However, the complaint on file with the Court contains no exhibits. At this stage in the case, the Court must accept as true Rush's allegation that he requested and was denied a hearing.

Cir. 1994). Rush alleges that Defendants terminated his employment "without equal protection of the law." Docket entry #1, ¶48. This conclusory claim lacks any supporting factual allegations. Rush fails to allege any facts indicating that he received dissimilar treatment or that he was similarly situated to those who received favorable treatment. Because Rush has failed to allege a violation of his right to equal protection, Defendants are entitled to qualified immunity, and the claim must be dismissed.

State Statutory Immunity

Defendants assert that they are entitled to state statutory immunity with respect to Rush's state law claims against them in their individual capacities. Arkansas Code § 19-10-305 provides:

> Officers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment.

Ark. Code Ann. § 19-10-305(a). In order to overcome Defendants' immunity defense, Rush has the burden of showing malice. *See Fuqua v. Flowers,* 341 Ark. 901, 905 (8th Cir. 2005)("Thus, for a plaintiff to counter an assertion of sovereign immunity [under § 19-10-305(a) ], he or she must allege sufficient facts in his or her complaint to support the claim of malicious conduct by the defendant.").

The Arkansas Supreme Court has held that bare allegations of malicious conduct, with no factual support, are insufficient to overcome statutory immunity. Rush contends that Defendants are not entitled to immunity under § 19-10-305 because "it was not within the Board's discretion to make the decision not to renew Plaintiff's contract without a vote of the Board [or] to take such actions in illegal executive sessions." The Court finds that these

11

allegations are insufficient to demonstrate that Defendants acted with malice[9] and that Defendants are entitled to immunity under § 19-10-305(a).

## IV.

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (docket entry #11) is GRANTED IN PART AND DENIED IN PART as follows:

1. Plaintiff's claims against Ozarka College and claims for damage relief against the individual defendants in their official capacities are barred under the Eleventh Amendment. Accordingly, these claims are DISMISSED WITH PREJUDICE TO THE RE-FILING OF CLAIMS IN FEDERAL COURT.[10]

2. The individual defendants sued in their individual capacities are entitled to qualified immunity with respect to Plaintiff's equal protection claim under 42 U.S.C. § 1983. Accordingly, this claim is DISMISSED WITH PREJUDICE.

4. The individual defendants sued in their individual capacities are entitled to

---

[9]In defining malice, the Supreme Court of Arkansas has stated:

It is true that in law malice is not necessarily personal hate. It is rather an intent and disposition to do a wrongful act greatly injurious to another. Malice is also defined as "the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent.... A conscious violation of the law ... which operates to the prejudice of another person. A condition of the mind showing a heart ... fatally bent on mischief."

*Simons v. Marshall*, 2007 WL 1219739 (Ark., Apr. 26, 2007)(quoting Black's Law Dictionary, 956-57 (6th ed.1990)(internal citations omitted).

[10]*See Texas Cmty. Bank v. Mo. Dep't of Soc. Serv.,* 232 F.3d 942, 943 (8th Cir.2000)(if State's Eleventh Amendment argument is meritorious, it is entitled to preclude the possibility of re-filing by having claim dismissed with prejudice ).

immunity under Ark. Code Ann. § 19-10-305(a) with respect to Plaintiff's supplemental state law claims.  Accordingly, these claims are DISMISSED WITHOUT PREJUDICE.[11]

5.   The following claims remain: Plaintiff's free speech and due process claims under 42 U.S.C. § 1983 to the extent that Plaintiff seeks injunctive relief against the individual defendants in their official capacities and damage relief against the individual defendants in their individual capacities.

IT IS FURTHER ORDERED that Defendant Perryman's motion to adopt (docket entry #32) is GRANTED.

IT IS SO ORDERED THIS 17TH DAY OF JULY, 2007.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[11]These state law claims are dismissed without prejudice because the Court is not barring Plaintiff from seeking any administrative or other state remedies that might be available to him.